Good morning, Your Honors. May it please the Court, Sassoon Albania on behalf of Petitioner Tamara Grigoryan, I would like to first address, Your Honor, since there are a lot of issues to address, the alleged inconsistencies in this case, because although it may seem like the judge pointed out several of them and the BIA pointed it out, none of them are substantial, none of them, even under Shrestha and post-real ID, under the totality of circumstances, would obviate the adverse credibility finding. Clearly, joining a party, Your Honor, does not necessarily mean you are a card-carrying member of the party, first of all, Your Honors. She never said she was a member of the party, and they kept harping on whether she joined or was a member. It seems to me, and maybe I'm wrong, and that's why I'm asking you the question, it seems to me that just arguing about whether what they said was right or not is not exactly the way to win on a substantial evidence review. I mean, if I were going to do on substantial evidence review, it seems to me I'd come up with some legal case that says they couldn't have gone there, because otherwise it's just your argument against their argument. So when we take she was a member of the party and then she says she wasn't, there's two ways you could go on that particular issue. One argues one, one argues the other. But if it's only substantial evidence review, I'm stuck with what the IJ and the BIA do, because I can't undo it if they have substantial evidence. Yes, Your Honor, but legally, the substantial evidence standard, even approaching it from a legal argument, you still need to show that the IJ's inconsistencies are inconsistencies, because if they're not, it's not an inconsistency at all. At that point, Your Honor, there have been cases where this Court has to. I've made a lot of jury arguments in my mind, and the prosecutor gets up and says one thing, and I get up and say another, and I argue as well as I can, and the jury comes down with the answer. My honest impression about that is the only way I win that is on an insufficiency of evidence for the jury to come there. I've got a substantial evidence inquiry, so that's why I'm trying to. With regard to the legal issues in this case, Your Honor, and I appreciate the Court putting me on notice of that, I think the legal issues are twofold. Again, with regard to, and I'll get to corroboration, which is a key issue in this case, I think. There is a legal issue there. But first, with regard to, I won't get into the individual inconsistencies, but I would just like to point out that under SOTA Olarte, the IJ never provided a chance for the respondent to explain any of these inconsistencies. And the Court has. It seems more a legal argument. Yes, Your Honor. That the IJ had to do certain things to get to where he wanted to go. And in each one of these, the petitioner had to be confronted, correct? That is correct, Your Honor. So one way then legally to fight each one of these is to say, were they confronted? That's correct, Your Honor. And for none of these inconsistencies, the ones that the IJ found to be an inconsistency, was she confronted and asked, why do you say this and why did it say this previously? Well, and even if I were to agree with you on that, there is one part of the IJ's decision that's a little tougher. And that is that the testimony was vague. Uh-huh. As to the arrest and the interrogation. Well, Your Honor. Now in that particular instance, I've never found a case that says they had to be confronted. That's correct. So when you're talking about vague, what's the standard? The standard is the IJ has to point out exactly where she was vague and why she found the testimony vague, Your Honor. And allow... And allow the respondent to explain, to clarify. And you're saying that didn't happen here? That's correct, Your Honor. Especially with regard to the interrogation, where the individual stated that she repeatedly stated that they asked her those two questions. As we pointed out in the brief, it could be that, and it is common in Armenia or elsewhere, they repeatedly asked the same types of questions. She was never asked, were there any other questions asked? Why are you pointing out two questions when you were detained for two days? She was never asked about why she was being vague. She was never given a chance, even if the court finds it vague. And also, Your Honor, with regard to corroboration in this case, the... Okay. That's an issue which you probably want to take out. My worry is that on corroboration you lose if she needed to give any. Well... Because I don't know how many times she was told you've got to have corroboration. That's correct. Our only point with regard to that, Your Honor, would have been that basically she did ask for corroboration on a couple of the elements, and the applicant indicated that the family or she was afraid to go to the doctor, and she did provide explanations. The I.J. never stated why those explanations were not sufficient, and the I.J. actually wanted her to get an arrest record from the police department, which... additional time to supplement the record, says, I do note that there is a statement and a partial copy of the passport attached to the asylum. However, there are no supporting documents. Given that this application is subject to documentation, that is, the respondent produced reasonably available documents to corroborate. The I.J. says, Do you want additional time? She said, Well, I don't have any additional documentation. We would just... And the I.J. asked her on her lack of documentation that she'd been arrested, and the I.J. continued the hearing twice for that. Yes, Your Honor. And still, and warned her, Get some in here. Still, she didn't. Well, Your Honor, we would just argue with regard to the PPA, the fact that she wanted corroboration with regard to the People's Party of Armenia... Oh, I see. ...membership records. She was not under Oshodi, which Oshodi never addressed that because they never got to that issue, but it was one of the issues. Wren indicates that it's temporal. The I.J. has to first listen, find not credible, and then say, This is the area I need further corroboration on, and she did not. But going back to your other argument, Your Honor, with regard to the vagueness, the I.J. did state that it was vague regarding the interrogatory, but there were so many details in this case where the applicant was entirely consistent and credible. The I.J. should have provided a chance to explain any alleged inconsistencies. I won't get into the inconsistencies because I think we've addressed it in the brief. Well, the inconsistencies we've kind of gone through. You said she was never confronted, but on the vague, it's a little tougher issue for you, it seems to me. Well, no, the vagueness, Your Honor, the I.J. has to explain either why she finds it vague or give the applicant and give the applicant a chance to explain why there was not a single question asked, was there, why was there no other questions asked? How was it two days of interrogations and there were no other questions asked? The I.J. did not provide any, and we provide a very reasonable explanation for that in the brief, that it could be that the applicant answered just the one question that was asked. What kind of questions were asked? She was not further prodded. Were there any other questions and so forth? So to find a vague on an area where it could be two days of questions asked during an interrogation. So the ultimate question is, if I swallow what you're telling me, what do I do? What remedy do you want? We would ask in this case, Your Honor, for the court first, again, I would implore the court to view each inconsistency and decide if the totality warrants an adverse credibility. What is your remedy? What do you want? Either a remand, Your Honor, for a chance for the respondent to clarify the vagueness and the inconsistencies. Okay. So you want us to remand for additional hearing regarding. . . Yes, Your Honor. Regarding what? Regarding explanations as to the areas the I.J. found vague. Okay. And regarding the. . . Credibility then? Yes, Your Honor. And regarding the inconsistencies that she never had a chance to clarify. That's correct, Your Honor. All right. Thank you very much. Good morning. May it please the Court. Kelly Walls for the Attorney General. No record evidence compels reversal of the agency's determination that under the Real ID Act, totality of the circumstances of analysis, Ms. Gregorian failed to present a credible claim due to inconsistencies in her testimony and application and failure to corroborate her asylum claim.  Sure. I'm really not with you on the inconsistencies. Okay. But I'd like to hear what you have to say on the corroboration. The corroboration? Sure. I think this is one of those cases where at the end of the day, the immigration judge was left just not knowing what to believe based on the testimony alone and so required corroborating evidence. In fact, on four occasions, once at a master calendar hearing in 2006, at two master calendar hearings in 2007, and at the end of the first merits hearing in 2008, emphasized how important it was to have corroborating evidence. And was specific in terms of what the judge needed to see? Sure. For example, well, at the very first master calendar, before things got started, the IJ said, I need more than just your declaration. I need you to bring some documents from other sources in. At the end of the second master calendar hearing, or the second time you emphasized the need, she emphasized the need for the documents. That was the March 12, 2007 hearing. She specifically said, I need documentation of the past persecution. The third time, the immigration judge inquired about the availability of the documents from family members in Armenia, given that people who knew of her activities were still living there, and something as simple as a letter could help to corroborate the claim. And at the end of the first merits hearing, the immigration judge said, okay, I understand you don't have evidence of the arrest. I need something from somebody in Armenia to explain why you don't have that. So a letter from family saying, I'm sorry, that I'm afraid that we can't go to the police to ask for documentation. So there was very specific instruction as to the type of documentation that would have been helpful in clarifying the circumstances. In this case, we have very confusing testimony. Even if you credit everything she said, it's back and forth. And at the end of the day, it's just confusing as to what happened and whether or not how involved she was with her political party. And that is almost more like in the pre-Real ID Act circumstances, like in Sidhu, where they said, at the end of the day, when the I.J. doesn't know what to believe, corroborating evidence is vital to the claim. Here, that's – even if you say – Under the Real ID Act, then the corroboration changes, correct? Well, under the Real ID Act, it strengthens the corroboration requirements so that even if testimony is found credible and persuasive, the immigration judge may still require corroborating evidence. This is not a case where the testimony was persuasive and credible. This is one where it was very questionable. So the fact that it was requiring corroboration isn't so much relying on the Real ID Act's changes or amendments, but so much as just the general principle that's existed throughout asylum law that when all you have is testimony, and that testimony is questionable or doubtful, the corroborating evidence is vitally important. And if – and just remind me, the standard is that if the Petitioner can't come forward with the corroborating evidence that the I.J. wants, then the Petitioner loses unless the I.J. shows – The evidence – sure. The evidence has to be reasonably available or attainable. Okay. Why was it here, then? I would say something as simple as a letter from her family. If we go back to, again, the pre-Real ID Act-type law as to what's available, in Chubhchub, the Court said – you know, and I understand, that case dealt with a country out of Western Europe, and this is Armenia, so it's not – but that letters from family are reasonably obtainable. So maybe she couldn't have gotten medical evidence because she said she didn't go to the doctor. That's fine. And maybe her family is afraid to go to the police department. But she didn't have anything from her family at all. There's nothing beyond background materials dealing with general country conditions in this case. She said that after she had come to the United States, a letter was left at her old apartment saying that she was required to report to Internal Affairs. But she told her neighbor to just rip that letter up and don't worry about it. That – I mean, if you know you have a case coming forward, that seems like the type of evidence that the neighbor easily could have included in a letter saying, I found this at your apartment and submitted to the court. We're not asking for her to go to their administrative agencies or police department or even the political – Can I ask, did Ms. Gregorian give an explanation for why she couldn't get the friends or family members in our media to provide the letter? Not really. She just – she said that she admitted that she had family there, that her daughter was still living in the same area. As to the letter that was left or the note that was left, she said she just didn't think about it. So there just wasn't a persuasive explanation. And when you take the lack of corroboration and no explanation, no persuasive explanation for the lack of corroboration on top of questionable testimony, nothing in the record compels reversal of the agency's denial, the agency's finding that her claim was incredible. Let me ask you a little more about this corroboration. Sure. I'm very glad to have my colleagues' questions. My worry is this. If I cannot support the BIA's adverse credibility determination, but I find that she didn't supply the right corroboration, don't I have to remand? I think in that case you actually end up in like a situation in Wren where they reversed – the panel reversed the adverse credibility finding but found that the lack of corroboration was a sufficient basis to deny the petition because under the Real ID Act, even if it is credible, so even if you were to say the inconsistencies are not sufficient to support an adverse credibility finding, the lack of corroboration on its own is still a basis to deny the petition for review. And while we are not – the government is not adopting the notice requirement for corroboration in Wren, we would argue that that's addictive. I would say as that decision stands, the court should follow it and find that corroboration alone would be a basis if it rejects. Well, I guess you've really addressed the issue that I have kind of worried about. It doesn't seem to me the government's ever given any indication that they even think Wren has any good law in it. In fact, they've beat up Wren every time they get a chance. In fact, even my colleagues, some of my colleagues beat up Wren every time they get a chance. So, I mean, without Wren or your interpretation of Wren, it seems to me that if I can't find an adverse credibility determination that I agree with, even if the corroboration was not done, I should remand to give the BIA some more chance to look at this, shouldn't I? You know, I respectfully disagree with that because even if you take – What case tells me that? Well, I was going to say Wren would, but if we take – Well, if we take Wren away, then we're left with the Real ID Act and the Immigration and Nationality Act have multiple requirements for an asylum claim. One is the credible and persuasive testimony. If we assume for the sake of argument that the testimony is credible because you don't find the inconsistencies to be – Well, I don't know that I – just because I don't find the inconsistencies that I need to hold the testimony credible, that's one way I can go. Sure. But supposing that instead I said, well, you might be right about that, but you never confronted. And that's the worry that I have. I think that – I look at the first she was a party member and then she wasn't. I mean, I have a checklist of what I deal with. Sure. I'm surprised that the IJs don't have my checklist because it seems to me that when I have an inconsistency, then the next thing I say, was she confronted? And then I say, well, what did she say? Well, what did the IJ say to reject what she said? I mean, those questions just pop right out. So I looked at all these, and I – frankly, I didn't find any confrontation at all. But then I got to vague. So that's why I've been giving him the questions on vague. Sure. So, I mean, I'm there. I would say, I'd remand to have another hearing. Let's see what we got here. Because she's never confronted. And even though she was not – didn't give us any corroborative evidence and was told many times to give it, I still don't know what to do. I mean – No, I don't – she wasn't confronted in the sense of – I'm going to make the argument for you. Okay. What you want to know in this record and what we should decide the case on the record. Shouldn't we? You should decide the case on the record as it stands. How much time did she have from the beginning to the end? Did she have plenty of time to corroborate? Did she have plenty of time to – you have to make your own argument. Is time significant in this case? I believe it is. Can we look at this record? Sure, as I said before. When you're talking about a remand, what does she need a remand for? When she had how much time? While she was – her first master calendar hearing where she was given notice of corroboration was in August of 2006. And then how long did it take? Her first merits calendar hearing was in January of 2008. So she had over – Why are you talking about that time? That's what we're talking about. I think – A remand for when you've already had more than adequate time. Isn't that the record that's before us? That is the record. And I would say that, as I've been saying, this is not one of those cases where there's these glaringly obvious, you know, I was a member of this political party and now I'm claiming that I was Christian or something like that. It's not so obvious on the face that they had to say, well, what about that? It was more questioning about what she was saying. So, for example, when she was talking about the kind of work she did for the party and when she did it, she was questioned on cross-examination on the exact same issues that she testified to on direct and in her application, and she provided inconsistent and contradictory testimony as to that point. So at the end – Well, MBIJ did advise her of the problems, didn't they, on this record? Don't we find that? Yes, as far as the – And did she have time to answer? Well, without Judge Ferris helping you, I really would get back – I really would like you to get back and answer my questions. I mean, Judge Ferris wants to emphasize the corroboration, but I didn't hear from even him the case that suggests that if somebody's given the right to corroborate and doesn't, that that eliminates my total thought about whether really I can say she was not credible on the inconsistencies because they didn't follow the law. Sure. No, I think that's – it's not so much a case as it's what's – it's codified in the Immigration and Nationality Act. Well, the case is Wren, and there's no reason for you to run from that. It is binding on us. No, no, no, I – Judge Smith wants us to put it aside. We are bound by it. And I completely agree. All I'm saying is just the government's position at this point is that the notice requirement in Wren was something created by that panel. But in this case, it's not even an issue because of the four different times that they were given notice. So there is Wren. And then in addition, in the Real ID Act, it specifically says that the lack of corroboration may be fatal to a claim, even when the testimony is persuasive and credible. And in this case, if we don't go as far as saying incredible or credible, but just say questionable or doubtful, the lack of corroboration likewise is fatal to her claim. Thank you. Thank you. I appreciate your argument. Your Honors, briefly, I'll go through the issues of rebuttal. With regard to Wren and the notice requirement, basically under the Real ID Act, if the IJ, even if they do find credible but feel there's some area that they want corroboration on, they can then require corroboration. But if we're going to ask for a remand under SOTA Olarte to explain the vagueness and the inconsistencies, the IJ would then have a chance to see if corroboration is even needed. Your Honor, that was a good question. The record, she did have time. However, she was not the only notice the IJ gave. In fact, the IJ may have, I don't want to say misled, but what she had. How much time, as you computed, did she have? This isn't a situation where the IJ was impatient and didn't give her time. We've seen files where. . . That's correct. That's true. But in this case. . . What the IJ stated. . . The IJ was working with her, wasn't he? Your Honor, I realize I'm over my time, if I may have a minute. You can answer his question, you bet. Thank you. What the IJ stated is that you have some family in Armenia. You could have them go to the CDMP and ask for records. And that's on page 8 of the transcript, page 73 of the AR. And on page 129 of the AR, the IJ said if you don't have an arrest record, you could go get it from a third-party human rights organization. Not once did she say you could get letters from your family or some kind of corroboration, contrary to what the government has asserted. I looked through the entire transcript. Not once did she say a single letter or anything would have helped in this case to corroborate. No, but I think the government's point is there. And I know you want to be fair. Her point was she's saying that there's a problem. The family can't do this. The family can't do this. But there's no letter from the family saying we can't do it or we won't do it because of this reason or the other. So she's not saying that she was required to get the letter from the family. That's correct, but she was never asked. She doesn't have to be asked from the government's point of view. She doesn't have to be asked. She should have at least been asked by the IJ. She should have at least been asked by the IJ. Why didn't she give a letter? She's saying that there was some problems, but she's arguing there's no letter from the family saying that these problems were there. There's nothing to corroborate her statement that there was a family. That's correct, Your Honor. Had she been asked why did you not provide a letter from your family members, perhaps she would have had a chance to explain why she can't get it, the letter from the family members. And in this case, Your Honor, basically we would just ask for remand to allow her to clarify in summary the vagueness issue, the inconsistencies. Normally you remand because the person hasn't had time to produce. Isn't that true? Well, Your Honor. Didn't she have time to produce everything she needed to produce? Without the respect in some cases, this Court unpublished decisions, which I won't cite to right now, has recently remanded where the client had three years, four years to produce the evidence, but never was put on specific notice, was never given a chance to clarify the inconsistencies and so forth, even though they may have had two, three years. Granted, had I been the attorney in court, I may have corroborated sooner, but that doesn't mean she was given a chance to explain why she didn't get this documentation, why the judge thought that the interrogation response was vague. She was asked one question about the interrogation, no follow-up questions. So I would just ask for her to have that opportunity, Your Honor, given that. Thank you very much. Thank you. Appreciate both of your arguments. They were very good. And you needn't ever assume from questions we ask how we've decided. Sometimes you argue from the point that you've already decided, but you want to see how somebody fills in the gap. So you don't make any assumptions. Even when one judge will give you the good argument. No.
judges: Farris, Smith, Watford